

# THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: | )<br>) |
| GARY W. LAURI, and<br>JEANANN LAURI | ) Case No 05-4194<br>)<br>) |
| Debtors. | ) Chapter 7<br>) |
| | ) |
| MARTIN P. SHEEHAN, TRUSTEE | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Adv. Proc. No. 06-85<br>) |
| GLADYS LITTLE, | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION

Martin P. Sheehan, the Chapter 7 trustee (the "Trustee"), seeks to recover about $40,000 transferred by Gary W. Lauri (the "Debtor") to his mother, Gladys Little, in the year preceding his bankruptcy petition pursuant to 11 U.S.C. § 548. Both Ms. Little and the Debtor aver that the money never "belonged" to the Debtor; rather, Ms. Little claims that she transferred the money to the Debtor to hold in an oral trust so that when she died, the Debtor could distribute the money to himself and Ms. Little's grandchildren without the necessity of probate.

The Trustee filed a motion for summary judgment on his fraudulent conveyance claim on June 5, 2007, and Ms. Little timely filed a response on June 28, 2007. The court finds that oral arguments on the motion are not necessary, and for the reasons stated herein, the court will deny the Trustee's motion for partial summary judgment.

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A fact is not "genuinely disputed" unless the factual conflict between the parties requires a trial of the case for resolution. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996) ("If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, this Court will find summary judgment is improper.").

## II. BACKGROUND

Ms. Little lives in both New York and Florida. She had accumulated several certificates of deposit, and after attending estate planning seminars in Florida, she determined that, to avoid probate, she would place at least four of the certificates of deposit, each valued at approximately $10,000 in the name of her son, the Debtor, who is a resident of West Virginia.

Ms. Little and the Debtor had an oral understanding that the certificates of deposit were hers, and that after her death, the Debtor was to distribute the principal amount to her grandchildren. During her life, however, the interest payments on the certificates were payable to Ms. Little. The Debtor never used any interest income or principal of the certificates for his own benefit, except that

he would either keep a portion of the interest income, or demand payment from Ms. Little, to pay his personal income tax liabilities insofar as his tax liability increased as a result of the interest payments on the certificates of deposit. Money from the interest payments was directly deposited in the Debtor's bank account, and he would then issue a personal check to his mother in the same amount as the interest payment.

On October 25, 2004, the Debtor cashed in Certificate No. 684 in the amount of $10,148.34 and received a cashier's check payable to Ms. Little on the same day. Similarly, the Debtor cashed in Certificate No. 691 in the amount of $10,148.34 on November 8, 2004, Certificate No. 608 in the amount of $9,990.00 on November 30, 2004, and Certificate No. 549 in the amount of $9,990.00 on December 21, 2004. Each time the bank contemporaneously issued a cashier's check that was payable to Ms. Little.

At the time the Debtor cashed in the certificates of deposit and obtained the cashier's check payable to Ms. Little, he stated that he was having trouble making payments to his creditors as his bills became due and that "everything was just bare minimum." Notwithstanding his personal insolvency, all the money from the certificates went to Ms. Little. The Debtor filed his Chapter 7 bankruptcy petition on September 20, 2005. Unsecured creditors have filed claims in the Debtor's bankruptcy case in the amount of $28,388.82.

### III. DISCUSSION

The Trustee argues that the four cashier's checks, totaling about $40,000, that the Debtor sent to Ms. Little in the year before his bankruptcy petition constitute avoidable fraudulent transfers under 11 U.S.C. § 548. Ms. Little contends, however, that the arrangement was one of trust, with the Debtor never having any equitable interest in the certificates of deposit.

Before it was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (April 20, 2005), which amendments did not take effect until after the Debtor filed his bankruptcy petition, § 548 of the Bankruptcy Code provided:

> (a)  (1) The trustee may avoid any transfer of an interest of the debtor in property . . . incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
>    . . .
>
>    (B)  (i) received less than a reasonably equivalent value in exchange for

-3-

        such transfer or obligation; and

(ii)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

11 U.S.C. § 548(a)(1)(B).

      As an initial matter, the court must determine whether or not the debtor ever had any interest in the certificates of deposit. Because the court concludes that genuine issues of material fact exist as to whether the Debtor held the certificates of deposit in a revocable oral trust for the benefit of his mother and her grandchildren, the court will deny the Trustee's motion for partial summary judgment.

      Pursuant to § 548(a)(1), as a prerequisite for prosecuting a fraudulent transfer cause of action, the debtor must have transferred "an interest of the debtor in property." In general, when the debtor is a trustee, holding legal title to property for the benefit of another, then a transfer of that trust property is not a transfer of "an interest of the debtor in property." *See, e.g.*, 11 U.S.C. § 541(d) (stating that when the debtor only holds legal title to property, the equitable title to that property is not property of the estate); *Begier v. IRS*, 496 U.S. 53, 59 (1990) (" '[P]roperty of the debtor' . . . is best understood as that property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceedings. . . . Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.' Nor is such an equitable interest 'property of the debtor' for purposes of § 547(b)."); *Jenkins v. Chase Home Mortg. Corp. (In re Maple Mortg.)*, 81 F.3d 592, 595-96 (5th Cir. 1996) (holding that the transfer of monies held in trust cannot form the basis for a § 548 fraudulent transfer claim when the trustee has no equitable interest in the monies); *Daly v. Kennedy (In re Kennedy)*, 279 B.R. 455, 458 (Bankr. D. Conn. 2002) ("[F]unds held in trust by a debtor are not property of his bankruptcy estate or, for the specific purposes of Code Section 548 . . . property of the debtor."); *Restatement (Second) Trusts* § 221 cmt. a (1959) ("On the bankruptcy of the trustee the title to the trust property does not pass to the trustee in bankruptcy; and the trustee's discharge in bankruptcy does not affect the interest of the beneficiary in the trust property.").

      A "trust" is defined as "a fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the

property to duties to deal with it for the benefit of . . . one or more persons . . . ." *Restatement (Third) Trusts* § 2 (2003). A "trust" may be created by "a transfer inter vivos by a property owner to another person as trustee for one or more persons, § 10(b), when the settlor properly manifests an intention to create a trust relationship. § 13. No requirement exists that the settlor use such words as "trust" or "trustee" in creating a trust; rather, all that is required is an external manifestation of intention to create a trust relationship. § 13 cmt. (a); *see also Payne v. Connelly*, 299 N.Y.S.2d 1013, 1016 (N.Y. Sup. Ct. 1969) ("To justify a finding of an oral trust, there must be such evidence that the intent to create the trust 'arises as a necessary inference therefrom and is unequivocal.' There must be an express declaration of trust or circumstances which show unquestionably that a trust was intended.") (citation omitted). No writing is required "when a trust is created through the conveyance of personal property to another person, either in trust for the person making the conveyance, or in trust for a third person . . . ." *State ex rel. Ins. Comm'r v. Blue Cross & Blue Shield of W. Va., Inc.*, 638 S.E.2d 144, 152 (W. Va. 2006); *see also In re Estate of Pearce*, 481 So. 2d 69, 71 (Fla. Ct. App. 1985) (same); *In re Estate of Kyte*, 22 N.Y.S.2d 236, 237 (N.Y. Sur. Ct. 1940) (same).[1]

In her deposition testimony, Ms. Little stated that the Debtor never had a certificate of deposit of his own, and that the only reason she transferred the certificates to the Debtor was to avoid probate if she should die, in which event she wanted the certificates payable to her grandchildren. The certificates were not a "gift" to the Debtor; rather, interest payments on the certificates were to be paid to Ms. Little. The Debtor knew that Ms. Little was to be paid the interest income, and the

---

[1] As explained by the Restatement:

> Unless a statute of frauds requires a writing for the creation of an enforceable inter vivos trust, a property owner may declare a trust or transfer property during life to another in trust without a writing. Thus, in all but a few jurisdictions, during the settlor's lifetime, enforceable trusts of personal property may be created orally. Similarly, absent a statute-of-frauds requirement, enforceable trusts of personalty may be created by contract, or (as often occurs) by receipt of payments under contracts, without a writing even if the promisor's performance is expected to occur after the settlor's death.

*Restatement (Third) Trusts* § 20 cmt. a (2003).

Debtor did not have the authority to reinvest the certificates.[2] As stated by both the Debtor and Ms. Little, he never profited from the certificates, and the only amount of money he received was to pay his increased tax liabilities incurred as the legal title holder of the certificates. Although the monthly interest payments were deposited in the Debtor's personal checking account, he directly paid the interest payment amount to Ms. Little. As stated by Ms. Little, she "totally trusted" the Debtor, and she knew that if something happened to her, the Debtor would distribute the certificates consistent with her wishes. While she was living, however, she stated: "It was my money, and he knew that, and we never had a problem over that." Similarly, when the Debtor testified as to his understanding with Ms. Little, he stated: "She was looking out for the future of probate further down the road to make sure that the children and grandchildren received their proper amount of money after her passing." On his mother's death, the certificates of deposit "were to be turned over to the second name on each one of them."[3]

Construing all inferences in favor of Ms. Little as the non-moving party, the court finds that a genuine issue of material fact exists as to whether the certificates of deposit held by the Debtor were trust property in which the Debtor had no equitable interest. For example, it appears that Ms. Little transferred the certificates of deposit to the Debtor to hold for the benefit of herself while living, and the benefit of her grandchildren after she died. The course of dealing between the Debtor and Ms. Little tends to indicate that – even though no words of trust were expressly used – the parties intended the relationship to be one of trust as to Ms. Little's personal property.

## IV. CONCLUSION

For the above-stated reasons, the court will deny the Trustee's motion for partial summary

---

[2] Ms. Little related that the Debtor sent her an interest check every month, and that sometimes the Debtor wrote on the check "gift to mom." Ms. Little stated that the checks were not gifts; rather, the Debtor thought that his mother was doing something illegal by placing the certificates of deposit in his name, and he was only trying to protect his mother by making those notations on the check. The Debtor acknowledged that the money he held was never his; thus, he could not make a gift of it.

[3] The certificates were not specifically payable on death; rather, the named depositor of the certificates was both the Debtor and a grandchild. For example, Certificate No. 691 lists the depositors as "Guy W. Lauri and Lance Michael Elson." Lance Elson is Ms. Little's grandchild and the Debtor's nephew.

judgment on his cause of action under 11 U.S.C. § 548. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021 setting forth the facts that the court deems either controverted or uncontroverted pursuant to Fed. R. Civ. P. 56(d).